## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **BRANDON DAVIS** and **NICOLE DAVIS,** c/o Friedman, Gilbert + Gerhardstein 441 Vine Street, Suite 3400 Cincinnati, Ohio 45202, | **Case No.** **Judge** |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| -vs- | |
| **CITY OF CINCINNATI,** **EMILY HEINE,** and **WESTON VOSS,** c/o City of Cincinnati Law Department 801 Plum Street Cincinnati, Ohio 45202, | |
| Defendants. | |

Plaintiffs Brandon Davis and Nicole Davis for their complaint against Defendants City of Cincinnati, Emily Heine, and Weston Voss, allege as follows:

### INTRODUCTION

1.     This is a civil rights action. On the evening of February 4, 2019, Defendants Emily Heine and Weston Voss, white police officers employed by the Cincinnati Police Department, aggressively—and without reasonable suspicion or probable cause—pursued, detained, and attacked Brandon Davis—a Black man—by repeatedly tasing him, holding him down with a knee shoved into his back, while he walked home from a friend's house.

2.     Heine and Voss followed their vicious attack by arresting and filing false charges against Davis, covering up their own misconduct and prosecuting him without probable cause.

Months later, after enduring ongoing prosecution, Davis was acquitted of all charges at trial. Defendants' unprovoked and unnecessary actions violated Brandon Davis' constitutional rights.

3.      Heine's and Voss' misconduct was rooted in historical legacy of criminalization of Blackness by police—acted out by these specific police officers and as part of the policies, practices, and customs of the Cincinnati Police Department.

4.      Defendant City of Cincinnati's unconstitutional policies, practices, and customs at the time of this incident were the moving force behind Heine's and Voss' misconduct, and the City of Cincinnati is also liable for Davis' trauma, injuries, and damages.

5.      Plaintiffs bring this case to seek fair compensation and to deter Defendants from continuing to engage in unreasonable seizures, excessive force, false arrest, and malicious prosecution against people in the City of Cincinnati, and to help bring to an end the criminalization of Blackness by the Cincinnati Police Department and its officers.

## JURISDICTION AND VENUE

6.      The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

7.      Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's complaint also occurred in this judicial district.

## PARTIES

9.      Plaintiff Brandon Davis, at all times relevant to the allegations made in the complaint, resided in Hamilton County.

2

10.     Plaintiff Nicole Davis, at all times relevant to the allegations made in the complaint, resided in Hamilton County.

11.     Defendant City of Cincinnati is a municipal corporation, duly incorporated under the laws of the State of Ohio and located in this judicial district, and is the employer and principal of Defendants Heine and Voss, and is responsible for the training, supervision, policies, practices, and customs of the Cincinnati Police Department.

12.     Defendant Emily Heine (P123) was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Cincinnati, acting within the scope of her employment and under the color of state law. She is sued in her individual capacity.

13.     Defendant Weston Voss (P350) was, at all times relevant to the allegations made in this complaint, a duly appointed police officer employed by the City of Cincinnati, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

FACTS

14.     Plaintiff Brandon Davis ("Davis") is a thirty-four-year-old Black man with autism. Because of this disability, he lives with his mother, Nicole Davis, who helps care for him.

15.     Davis' symptoms of autism often cause him to adhere strictly to routines, experience adverse effects in response to overwhelming sensory input, and struggle to focus when more than one person is speaking. Davis and his mother employ safety routines to aid Davis in navigating disability-related challenges.

16.     On the evening of February 4, 2019, Davis was at a friend's apartment.

17.     When he left his friend's apartment for the evening, Davis enacted his safety routines: whenever Davis leaves a location, he calls his mother to let her know he is on his way

home; whenever Davis needs assistance, he calls his mother; and he takes the same route every time he goes to particular locations.

18.     As he left the apartment, as his safety plan dictated, Davis called his mother briefly to let her know he was on his way.

19.     In addition, as his safety plan dictated, he prepared to take the same route he used every time he traveled between his friend's apartment and his own home.

20.     As he left the apartment building, Davis began to take his normal route home. Davis exited the building where his friend resides, and walked down the driveway toward the street. At the same time, Defendants Heine and Voss pulled into the building's parking lot.

21.     Davis reached the end of the driveway and turned onto the Beekman Street sidewalk, and then traveled toward his own residence on Beekman Street, just a few blocks away.

22.     Defendants Heine and Voss had a clear view of Davis walking from the apartment building, down the driveway, and onto the sidewalk along Beekman Street.

23.     Davis traveled along his route, which carried him alongside—but not through or in—the Wayne Playground park area. Davis continued walking past the park and then down Beekman Street.

24.     As Davis continued down Beekman and crossed Dreman Avenue, Defendants drove their cruiser to the area of the intersection where Davis was walking.

25.     Without reasonable suspicion or probable cause, Heine called out to Davis to stop and come over and talk to her and Voss.

26.     Without reasonable suspicion or probable cause, Voss told Davis he was not free to leave, and told him to come over and talk to Voss and Heine.

27.     Davis responded that he had not done anything wrong.

28.     Defendants Heine and Voss had no reasonable suspicion or probable cause to detain or arrest Davis.

29.     Defendants Heine and Voss nonetheless exited their cruiser, rapidly approached Davis, and initiated a detention.

30.     As the cruiser lights flashed, and Voss and Heine gave competing commands, Voss threatened to tase Davis almost immediately.

31.     Davis was overwhelmed by the clashing loud noises and flashing lights, due to his hypersensitivity to this cacophony of sensory input. He continued to state that he had not done anything wrong and had not been in the park.

32.     In accordance with his safety plan, Davis removed his phone from his pocket to call his mother for help. Heine's body camera footage clearly shows the cell phone in Davis' hand. Davis' other hand was in the air, in clear view of Defendants Heine and Voss.

33.     Defendant Voss yelled at Davis and threatened repeatedly to tase him. Defendant Heine shouted at Defendant Voss to tase Davis.

34.     Without reasonable suspicion or probable cause, Defendants Heine and Voss grabbed Davis and shoved him against a chain link fence.

35.     While shoving Davis against the fence, Voss immediately deployed his taser unintentionally because of his careless handling of the weapon. Voss' taser barbs narrowly missed Davis.

36.     Defendant Heine then initiated her own vicious attack. Heine brutally tased Brandon Davis over and over—a total of seven times—in a two-minute and fourteen-second period.

37.     During this assault, Heine and Voss pushed Davis onto his stomach on the ground. Voss dug his knee into Brandon Davis' back, holding him down, while Heine continued to shove her taser into Brandon Davis' body and pull the trigger.

38.     Davis screamed in pain from Heine's repeated use of her taser in drive-stun mode. Voss and Heine knew they were causing Davis extreme pain.

39.     In the midst of this vicious attack, Heine and Voss had control of Brandon Davis, with their bodyweight on top of him, holding him down. Davis continued to try to explain to Heine and Voss that he had not been in the park, and screamed in pain as Heine nonetheless electrocuted him with her taser while Voss watched. Davis pleaded again and again with Heine and Voss to stop tasing him.

40.     Throughout this event, Defendants continued to demand that Davis place his hands behind his back prior to Heine pulling her taser trigger again—even though body camera video reveals that Davis' hands were indeed behind his back, and that any movement or noncompliance during those rounds of tasing were the result of involuntary muscle spasms resulting from Heine's use of the taser. Heine and Voss did not provide a reasonable opportunity for compliance between drive stun applications.

41.     Heine and Voss heard and saw Davis screaming and writhing in pain throughout this brutal use of force.

42.     Brandon Davis was unarmed during this entire event. Davis did not resist, attempt to pull his hands away from Defendants, threaten anyone, present a threat, actually harm, nor attempt to harm Defendants or anyone else at any time during these events. He did not possess, attempt to possess, or appear to possess any weapons. Davis did not engage in any behavior that would justify Defendants' attack.

43.     Plaintiff Nichole Davis, Brandon Davis' mother, bore witness to all of this brutality—hearing firsthand over the phone her son's screams and cries of anguish, pain, and fear. Despite recently undergoing major surgery, she ran from her house to try to find Brandon to help him. She could hear his screaming as she ran down Beekman Street toward him.

44.     Defendants Heine and Voss premised their entire pursuit, detention, and attack on Davis by falsely claiming they suspected him of being in a park after dark—which, even if it had been true, would not have provided legal justification for any of their misconduct. Heine and Voss fabricated this premise and knowingly provided fabricated statements, reports, and testimony to justify their misconduct.

45.     Defendants used unreasonable and excessive force in violation of clearly established law.

46.     Defendant Heine's tasing of Davis seven times; and her tasing of Davis without intervening opportunities for compliance, were clearly excessive and violated Davis' constitutional rights.

47.     Voss had a duty and opportunity to intervene to prevent Heine's excessive force, but failed to do so to protect Davis. Instead, Defendant Voss encouraged Heine to tase Davis and aided in holding him down while she did so.

48.     Even after Davis was handcuffed, Defendant Heine continued to aggressively point her taser at his back.

49.     Davis, who was crying because of the brutality he'd just experienced, told Defendants Heine and Voss that his leg was stuck—it had gone numb. Heine and Voss ignored him. Neither Voss nor Heine ever assisted Davis in changing the position of his leg.

50.     Heine and Voss later conceded that their choice to tase Davis seven times caused their attack to be prolonged.

51.     Use of a taser in drive stun mode is a pain compliance technique designed only to coerce an individual into compliance by causing intense pain. Voss and Heine admitted that their use of the taser against Davis was for the purpose of pain compliance.

52.     Davis was vulnerable and defenseless against Defendants' attack. The force used by the Defendant officers was excessive, unreasonable, unnecessary, and without probable cause.

53.     During this attack, each Defendant officer had the duty and opportunity to intervene to prevent the use of excessive force against Davis yet did nothing to assist or protect him or to prevent the brutality.

54.     Neither Voss nor Heine attempted to employ de-escalation techniques during this encounter, such as keeping voices low, keeping their distance, using patience, developing a plan, or reducing tension. Use of any of these accommodations would have been feasible under the circumstances, and all would have been in compliance with generally accepted police practices.

55.     After the tasing stopped, several additional Cincinnati police officers joined Heine and Voss, surrounding Davis.

56.     These officers pulled Davis' shirt up, exposing his back, to examine and document the areas where Defendant Heine tased him.

57.     As these officers caused further emotional pain, fear, and humiliation to Brandon Davis, his mother, Nicole Davis, watched, fearful for her son's safety.

58.     Davis continued to try to tell officers, including a supervisor who had arrived on scene, that he had not done anything wrong.

59.     The supervisor responded, saying "How old are you, young man?" Brandon responded, "I'm 32." The supervisor retorted, "You know how this game goes, then. Chill out."

60.     The supervisor's response indicated the he believed that because Brandon Davis was an adult Black man, he must have experienced the pain, fear, and humiliation of this type of event before and should therefore "chill out." But Brandon Davis had no history of criminal convictions.

61.     Supervisors within the Cincinnati Police Department subsequently encouraged, facilitated, and ratified Heine's and Voss' misconduct by allowing Davis to be arrested, charged, taken to jail, and subsequently prosecuted without probable cause.

62.     Supervisors with the Cincinnati Police Department also encouraged, facilitated, and ratified Heine's and Voss' unconstitutional actions by failing to discipline them after a subsequent review of their use of force.

63.     Defendants then arrested Davis and initiated prosecution, charging him with Being in a Park After Hours, Jaywalking, and Resisting Arrest.

64.     At the time the arrest report and charges were filed and prosecution was initiated, Defendants were aware of Davis' disability: the arrest report lists seizures and autism as Davis' medical conditions.

65.     Defendants arrested, charged, and took Brandon Davis to jail—all without probable cause.

66.     Brandon Davis was then forced to spend the night of February 4, 2019 in jail. He experienced extreme distress and terror the entire time. He could not sleep.

67.     Nicole Davis was fearful for her son while he was in jail and severely distressed about his wellbeing after this frightening, brutal attack.

68.     Even after Davis was arraigned and released from jail, and finally reunited with his

mother, he continued to face prosecution for months. The ongoing prosecution caused severe

emotional distress to Brandon Davis and Nicole Davis.

69.     Finally, a jury trial in Davis' case commenced on November 18, 2019, and

continued through November 20, 2019.

70.     At the close of trial, after just twenty minutes of deliberation, the jury found

Brandon Davis not guilty of Resisting Arrest.

71.     The trial court subsequently considered the evidence presented at trial in relation to

the minor misdemeanors—Jaywalking and Being in a Park After Hours. The trial court found

Brandon Davis not guilty of those offenses.

72.     Brandon Davis was completely acquitted of all charges against him, and was

vindicated of Heine's and Voss' false allegations and fabricated accounts.

73.     During the course of the attack, arrest, prosecution, and trial of Davis, Defendants

jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete

official reports and testimony, and to give false, incomplete, and misleading versions of these

events in order to cover up their misconduct.

74.     Defendants' actions as described in this complaint were without probable cause,

unjustified, objectively unreasonable, and constitute deliberate indifference. Defendants engaged

in willful, wanton, reckless, and/or negligent conduct.

75.     Defendants' conduct was the direct, actual, and proximate cause of Davis' injuries.

76.     The actions of the Defendants were taken jointly, in concert, and with shared intent.

77.     Despite their misconduct throughout their encounter with Brandon Davis, and

despite their fabricated statements, reports, and testimony, Defendants Heine and Voss were never

disciplined by the City of Cincinnati for the events described in this complaint. The Cincinnati Police Department chain of command found that Defendants' taser use was within Department policy.

### Policies, Practices, and Customs of the City of Cincinnati

78.     Defendant City of Cincinnati is responsible for the Cincinnati Police Department, including its officers' care and treatment of people like Brandon Davis. The City of Cincinnati is required to ensure that the policies, practices, and customs of its Police Department comply with federal and Ohio law.

79.     Defendant City of Cincinnati's police chain of command reviewed and ratified Heine's and Voss' conduct.

80.     Sergeant Daniel Roellig found that "the initial contact, decision to arrest Mr. Davis, use of the TASER in drive stun mode and use of hard hands was consistent with the Cincinnati Police Department's policies and procedures."

81.     Captain Paul Broxterman, Jr. found that "[t]he initial contact, use of TASER, and hard hands met Department policy and procedure."

82.     Cincinnati Police Department Chain of Command found that the "officer[s]' use of weapons as reported above is consistent with Department training and in conformance with Department policies, procedures, and state law."

83.     However, Defendant City of Cincinnati's use of force policy does not require police officers to allow individuals opportunities to comply with commands between taser cycles. The City of Cincinnati also failed to train and supervise its officers, including Heine and Voss, to give people adequate opportunity to comply with commands before repeating drive stun deployments. The City's policies, practices, and customs thus encourage the use of excessive force on unarmed,

nonviolent people via repeated taser drive stuns without opportunities to comply with demands, and were a moving force behind the excessive force used on Davis.

84. These deficiencies directly caused Heine and Voss to use excessive force against Davis by failing to allow him opportunities to comply between taser applications.

85. Defendant City of Cincinnati further has a policy, practice, and/or custom of police stopping people without probable cause or reasonable suspicion for fabricated reasons. This policy, practice, and custom was a moving force behind Defendants' decision to stop Brandon Davis in this case and caused the events that followed.

86. Defendant City of Cincinnati further has a policy, practice, and/or custom of police stopping Black people without probable cause or reasonable suspicion because they are Black. This policy, practice, and custom was a moving force behind Defendants' decision to stop Brandon Davis in this case and caused the events that followed.

87. These policies, practices, and customs are reflected in statistics collected pursuant to the Collaborative Agreement. For example, though less than half of Cincinnati residents are Black, in 2018 and 2019, over 60% of traffic stops conducted by Cincinnati police involved Black drivers. Likewise, in 2018 and 2019, pedestrian stops of people identifying as African American constituted 59.27% and 61.07% respectively of such stops. Further, in 2018, 68.55% of people arrested in Cincinnati were Black, and in 2019, 70.33% of people arrested in Cincinnati were Black.

88. Further, Heine and Voss committed their misconduct in light of and because of the policy, practice, and custom of the code of silence among City of Cincinnati police officers. Defendants had good reason to believe that their misconduct would not be revealed or reported by

fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

89.    People in the City of Cincinnati, including Brandon Davis, are and have been subject to patterns of unconstitutional use of unreasonable seizures, excessive force, false arrest, and malicious prosecution. Defendant City of Cincinnati was on notice of these constitutional deprivations yet has failed to timely or effectively remedy this state of affairs.

90.    The City of Cincinnati's policies, practices, and customs described in this complaint do not comply with the Collaborative Agreement. *In re Cincinnati Policing*, USDC S.D. Ohio Case No. C-1-99-317.

**Harm to Plaintiff Brandon Davis**

91.    The Defendants' misconduct—including their unreasonable seizure, use of excessive force, false arrest, malicious prosecution, and discrimination against Davis due to his disability and race—caused Brandon Davis to suffer extreme pain and fear.

92.     As a result of Defendants' misconduct and brutality, Davis suffered serious physical and psychological injuries, including but not limited to puncture wounds, scarring, and bruising and soreness about his body, along with a fearful night in jail, and stressful months of prosecution, culminating in a criminal trial.

93.    As a direct and proximate result of Defendants' conduct, Davis sustained physical and psychological injuries, including, *inter alia*, severe pain, fear, injury, emotional distress, embarrassment, and humiliation. Davis experiences nightmares and flashbacks and continues to fear walking home alone at night as a result of Defendants' conduct.

94.    The injuries suffered by Davis were all preventable had Defendants not engaged in illegal conduct in violation of Davis' fundamental rights.

**Harm to Plaintiff Nicole Davis**

95.     Defendants' misconduct also caused Plaintiff Nicole Davis to suffer extreme and serious emotional and psychic injury.

96.     As a direct and proximate result of Defendants' conduct, Nicole Davis sustained psychological injuries, including, *inter alia*, anxiousness, fear of police, hypervigilance, inability to sleep, trouble eating, and flashbacks.

97.     These injuries suffered by Nicole Davis were all preventable had Defendants not engaged in illegal conduct in violation of Davis' fundamental rights

FIRST CLAIM FOR RELIEF:
**42 U.S.C. § 1983 – Fourth and Fourteenth Amendments: Unreasonable Seizure**

98.     All of the foregoing paragraphs are incorporated as though fully set forth here.

99.     The actions of Defendants, as alleged in the preceding paragraphs, violated Brandon Davis' rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

100.     Davis was subjected to excessive force, detention, and arrest without reasonable suspicion or probable cause.

101.     The Defendant officers acted unreasonably and with deliberate indifference to the rights and safety of Davis.

102.     Defendants observed or had reason to know that excessive force would be or was being used, and had the opportunity and means to intervene to protect Davis and to prevent the use of excessive force against him—yet they did nothing to intervene, to assist him, or to prevent the brutality meted out by fellow officers.

14

103.    Defendants' actions as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above and of Davis' injuries.

104.    Defendants were acting under color of law and within the scope of their employment when they took these actions.

105.    Defendants are jointly and severally liable for this conduct.

### SECOND CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 – Fourth and Fourteenth Amendments: False Arrest

106.    All of the foregoing paragraphs are incorporated as though fully set forth here.

107.    In the manner described more fully above, Defendants, acting individually, jointly, and in conspiracy with each other, caused Brandon Davis to be unreasonably seized, detained, and deprived of his liberty without probable cause to believe that he had committed a crime, in violation of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

108.    Defendants, while acting individually, jointly and in conspiracy with one another, violated Davis' Fourth Amendment rights.

109.    As a direct and proximate result of Defendants' actions, Davis' constitutional rights were violated and he suffered injuries and damages, including but not limited to loss of liberty, emotional pain and suffering, and other grievous, continuing injuries and damages set forth above.

110.    Defendants were acting under color of law and within the scope of their employment when they took these actions.

111.    Defendants are jointly and severally liable for this conduct.

### THIRD CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 – Fourth and Fourteenth Amendments: Malicious Prosecution

112.    All of the foregoing paragraphs are incorporated as though fully set forth here.

113. In the manner described more fully above, Defendants, acting individually, jointly, and in conspiracy with each other, instigated, influenced, or participated in the decision to prosecute Brandon Davis, and there was no probable cause for the criminal prosecution. As a consequence of the criminal prosecution, Davis suffered a deprivation of liberty apart from his initial seizure. Davis' criminal prosecution was terminated in his favor in a manner demonstrating his innocence.

114. Defendants accused Davis of criminal activity knowing those accusations to be without genuine probable cause, and made statements to other officers and/or to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

115. Statements of Defendants regarding Plaintiff's alleged culpability were made with knowledge that these statements were false. In so doing, Defendants fabricated evidence and withheld exculpatory information.

116. As a direct and proximate result of Defendants' actions, Brandon Davis' constitutional rights were violated and he suffered injuries and damages, including but not limited to loss of liberty, physical sickness and injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

117. Defendants acted under color of law and within the scope of their employment when they took these actions.

118. Defendants are jointly and severally liable for this conduct.

## FOURTH CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 – *Monell* Claim against Defendant City of Cincinnati

119. All of the foregoing paragraphs are incorporated as though fully set forth here.

120. The actions of the individual Defendants and other City of Cincinnati employees and/or agents, as alleged above, were taken pursuant to one or more interrelated de facto policies

(even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of Defendant City of Cincinnati.

121. Defendant City of Cincinnati, at all times relevant herein, ratified, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently are directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

122. At all times relevant, the Defendant City of Cincinnati had interrelated de facto policies, practices, and customs which included, *inter alia*:

   a. the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their police officers who engage in unreasonable seizures;

   b. the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs related to police engaging in unreasonable seizures;

   c. the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their police officers who engage in improper and/or unlawful taser use;

   d. the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for taser use;

   e. the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their police officers who engage in fabrication of statements, reports, and testimony;

   f. the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs regarding police officer fabrication of statements, reports, and testimony;

   g. the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their police officers who engage in false arrest and malicious prosecution;

   h. the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs related to police engaging in false arrest and malicious prosecution;

i.   the code of silence.

123.   The aforementioned de facto policies, practices, and customs of the City of Cincinnati lead to harmful consequences to people who are the victims of police encounters within the City limits, including Brandon Davis.

124.   The policies, practices, and customs of the Defendant City and the CPD were the moving force behind the misconduct described in this Count and behind the violations of Plaintiff's rights.  The widespread practices were so well settled as to constitute *de facto* policy in the CPD, were part of CPD culture, and were allowed to exist because municipal policymakers with authority over the practices exhibited deliberate indifference to the problems, effectively ratifying them.

125.   Defendants' misconduct was undertaken pursuant to the policy and practices of the Defendant City and the CPD in that the violation of Plaintiff's rights, and as a result of conduct by the City's relevant final policymaker or the persons to whom final policymaking authority had been delegated.

126.   The actions of the Defendant Officers were approved, encouraged, and/or ratified by policymakers for the Defendant City and the CPD with final policymaking authority.

127.   The policy, practice, and custom of a code of silence results in police officers refusing to report instances of misconduct of which they are aware, including the type of misconduct describe in this complaint, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

128.    The de facto policies, practices and customs of failing to hire, train, supervise, monitor, investigate, discipline, transfer, counsel and/or control officer misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize lying and immunize officers from discipline.

129.    That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread City policy, practice, and custom is further established by the involvement in, and ratification of, these acts by supervisors and other officials and officers of the Cincinnati Police Department.

130.    The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Brandon Davis because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

131.    But for the belief that they would be protected—both by fellow officers and by the City of Cincinnati—from serious consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Brandon Davis.

132.    The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the acts against Davis alleged in this complaint.

133.    The City of Cincinnati therefore acted as the moving force behind and the direct and proximate causes of the violations of Brandon Davis's constitutional rights and all injuries and damages suffered by him.

134.    Defendants are jointly and severally liable for this conduct.

**FIFTH CLAIM FOR RELIEF:**
**State Law Claim for Negligence - Willful, Wanton and Reckless Conduct**

135.     All of the foregoing paragraphs are incorporated as though fully set forth here.

136.     Defendants Heine and Voss acted negligently when they violated their duty to exercise due care for Brandon Davis.

137.     Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as police officers for the City of Cincinnati.

138.     Defendants' misconduct directly and proximately caused the injuries and damages suffered by Brandon Davis as described above.

139.     Defendants are jointly and severally liable for this conduct.

**SIXTH CLAIM FOR RELIEF:**
**State Law Claim – Negligent and Intentional Infliction of Emotional Distress**

140.     All of the foregoing paragraphs are incorporated as though fully set forth here.

141.     Defendants' conduct was intentional and/or negligent and involved numerous breaches of the standard of care.

142.     Defendants knew or should have known that their conduct would cause Plaintiff Brandon Davis and Plaintiff Nicole Davis emotional and psychological harm.

143.     Defendants' conduct was willful, wanton, and/or reckless, and so outrageous in character and extreme in degree as to go beyond all bounds of decency.

144.     As a direct and proximate result of said Defendants' conduct, either individually and/or collectively, Brandon Davis and Nicole Davis faced and/or appreciated actual and serious peril, and they suffered permanent injuries, including, *inter alia*, physical harm, and serious and severe mental, emotional, and psychological injuries and damages as set forth in this complaint.

145.     Brandon Davis' and Nichole Davis' injuries and damages were reasonably

foreseeable, and the mental anguish suffered by Brandon Davis' and Nichole Davis as a result of Defendants' conduct is of a nature that no reasonable person could be expected to endure it.

**PRAYER FOR RELIEF**

Plaintiffs demand that judgment be entered in their favor on all counts and pray that the Court award the following relief:

A.    Actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate them for the violation of their rights, and for the injuries and damages they suffered;

B.    Punitive damages against all individual Defendants in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged in this complaint;

C.    Attorney fees and the costs of this action and other costs that may be associated with this action pursuant to 42 U.S.C. § 1988; and

D.    All other relief which this Honorable Court deems equitable and just.

**JURY DEMAND**

Plaintiffs demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: February 2, 2021

*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)
Sarah Gelsomino (0084340)
Alphonse A. Gerhardstein (0032053)
FRIEDMAN, GILBERT + GERHARDSTEIN
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
T: (513) 572-4200
F: (216) 621-0427
jacqueline@FGGfirm.com
sarah@FGGfirm.com
al@FGGfirm.com

*Counsel for Plaintiffs Brandon Davis and Nicole Davis*